Maria V. SPENCER, Appellant,

v.

STATE of Alaska, Appellee.

No. 4308.

Supreme Court of Alaska.

May 2, 1980.

Deborah A. Paquette, Asst. Public Defender, and Brian Shortell, Public Defender, Anchorage, for appellant.

David Mannheimer, Asst. Atty. Gen., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

RABINOWITZ, Chief Justice.

This criminal appeal raises a speedy trial issue under Alaska Rule of Criminal Procedure 45. Maria Spencer pled nolo contendere to a charge of manslaughter. Pursuant to procedures mandated in *Oveson v. Municipality of Anchorage*, 574 P.2d 801, 803 n.4 (Alaska 1978), her plea was explicitly conditioned on the right to appeal this speedy trial issue.[1] Thus, the question be-

---

1. Under *Oveson v. Municipality of Anchorage*, 574 P.2d 801, 803 n.4 (Alaska 1978), it must "be clearly shown, and the parties have stipulated with trial court approval, that our resolution of the issue reserved for appeal will be dispositive of the entire case." Such procedures were followed in this case.

fore us is whether prosecution of Spencer was barred by Rule 45.[2] This rule provides that an accused must be brought to trial within 120 days from the date of arrest, arraignment, or date the charge is served upon the accused, whichever is first. The rule further provides for exclusion of certain periods from the computation of the 120 days within which the accused must be tried. It is the appropriateness of the superior court's rulings as to various periods it excluded in computing the 120 days that Spencer challenges in this appeal.

On November 6, 1976, Spencer and her fiance, Jim Brown, were in Wasilla at the bar of the Holiday Lodge. After a brief argument, Spencer shot Brown while they were sitting at a table. The bullet struck Brown in both thighs, lodging in his right thigh.

Brown was taken to a hospital and treated. The wound was relatively insignificant and healed rapidly, Brown being discharged after only a short admission. Two weeks after release, complications in the form of pulmonary embolization developed, Brown was readmitted to the hospital, and subsequently died on December 7, 1976.

Spencer was arrested the evening of the shooting and charged with assault with a dangerous weapon. She was released from custody on November 12, 1976 after the assault charges were dismissed. On November 18, 1976, Spencer was indicted by the grand jury on an assault with a dangerous weapon charge and a bench warrant was issued the next day. On December 3, 1976, this indictment was dismissed and the bench warrant quashed.

According to the district attorney, the reason the indictment was dismissed was that the state knew of Brown's hopeless prognosis in early December and was "hoping that the defendant would not learn of

[Brown's pending] death while there was a lesser charge outstanding, plead to it, and thus get away with an ADW when it should have been a manslaughter." Following Brown's death on December 7, 1976, a criminal complaint charging manslaughter was filed in Palmer on December 10, 1976, and an indictment for manslaughter was returned on December 23, 1976. At a bail hearing on December 23, 1976, arraignment was set for December 29, 1976. The prosecutor did not request the issuance of a bench warrant at this time because Spencer had previously been represented by a public defender. He asked instead that the public defender be notified to produce Spencer. At the arraignment, neither Spencer nor the public defender who had previously represented her appeared since it is claimed that neither had been informed of the arraignment.

Upon Spencer's failure to appear for arraignment on the manslaughter indictment a bench warrant was issued on December 29, 1976. Subsequent to receipt of the bench warrant, Alaska State Troopers made efforts to find Spencer. Information that she was leaving the state for Nevada around December 30, 1976 resulted in contacting airport security authorities in Anchorage and Nevada. In January, 1977, an address of a possible residence was checked and a friend of Spencer's was contacted. During the spring, various contacts were made in the Anchorage and Palmer areas, none of which produced any useful information as to Spencer's whereabouts. Trooper Feichtinger, through confidential informants, learned in the summer that Spencer was not in the state but possibly in California. Again, relevant authorities were contacted. On August 17, 1977, an unlawful flight to avoid prosecution warrant was issued. In December, 1977, a suspect held in

**2.** The *Oveson* stipulation covered three issues. Appellant's reply brief dismissed the other two issues and we need not consider them.

Criminal Rule 45(g) provides:

(g) *Absolute Discharge.* If a defendant is not brought to trial before the running of the time for trial, as extended by excluded periods, the court upon motion of the defendant shall dismiss the charge with prejudice. Such discharge bars prosecution for the offense charged and for any other lesser included offense within the offense charged.

Charlotte, North Carolina was initially thought to be Spencer but was determined to be another individual. A short time after, Spencer began working in Chico, California, where she was finally located and arrested on January 31, 1978. She fought extradition on advice of counsel but was returned to Alaska on May 2, 1978, and arraigned on May 3, 1978. At her arraignment, counsel for Spencer made a Rule 45 motion.

In support of her motion for dismissal based on the failure of the state to comply with Rule 45, Spencer stated that following the dismissal of the assault with a dangerous weapon indictment she stayed in close contact with her counsel, checking with him every other day. Distraught over her fiance's death, she made plans to leave Alaska around the end of December. She had inquired of her counsel whether she could leave and he informed her that the district attorney did not seem to want to pursue the matter and it seemed she could leave the state. She left and spent some time with her family and eventually returned to California. At first, she stayed with friends

and later went to work at a bank and in January, 1978, was arrested on the Alaska charge.

The superior court heard extensive testimony at a series of hearings and received numerous briefs on the Rule 45 motion. The superior court held that the four month rule began to run on December 10, 1976, the day the complaint on the manslaughter charge was issued. As to the period from December 10 to 29, 1976, the superior court held that there was insufficient information as to what efforts were taken during this period to show due diligence and this 19 day period was charged against the state.[3] As to the period after December 29, 1976, the superior court held that the state had shown reasonable diligence by virtue of the efforts undertaken by the state troopers.[4] Thus, the whole period prior to Spencer's return to Alaska in May of 1978 was excluded from computation of the controlling 120-day period.

 Spencer contends that the superior court was in error in failing to hold that the four month rule had been violated. First,

---

3. Extensive hearings were held and testimony taken on the reason for Spencer's failure to receive notice of the arraignment. The normal notification procedure, if the defendant was represented by the public defender, was merely to put the hearing on the daily court calender. These daily calendars were usually picked up three times by both the public defender's office and the district attorney's office: the first pickup was on the afternoon prior to the date on the calendar; revised versions were picked up early the next morning and around noon so that any additions to the calendar could be covered. The official copy of the daily calendar of December 29, 1976, does list the Spencer arraignment. Although Jeff Feldman, Spencer's counsel, denies ever being informed of the hearing, the court as part of its ruling in the Rule 45 hearing found that the public defender agency had notice of the arraignment the morning of December 29. However, the court noted that it was unreasonable to expect the public defender agency to produce the defendant at an afternoon arraignment, having only received notice the same morning. To cure this situation, the superior court noted that in the future a summons or warrant would be issued in such circumstances.

4. Specifically, the court stated:

I find based upon the testimony of the officers as to their confidential informants and what they were told and what they actually did here, going to her former residence and inquiring about her is about all that you can expect officers to do in the situation in the absence of the other testimony here on her behalf showing that she had a mailing address—if they'd have come forward with the mailing addresses that they had, they'd come forward with the other addresses where she had lived and verification other than from the defendant herself that would have placed the state in a position that if they—they had a duty to inquire—all those areas if they could show that these people knew or had advised them or if they could with reasonable diligence—but there's no indication as to where she lived other than her former home or her own statement. The information of the informants are that she was in California and the—and went to Nevada, in fact, the police followed through on what they said the inform—the confidential informants gave and sent photographs and information to, I believe it was Nevada where she was picked up. So, I'm going to hold, in view of all of the circumstances, that there was reasonable diligence in trying to arrest her on the manslaughter charge after December the 29th.

she alleges that the "time against the state should run from the date of the original arrest." The superior court held that the manslaughter complaint issued on December 10, 1976 constituted a new charge based on new evidence not available at the time of the original arrest and thus excludable under Rule 45(c)(1).

Rule 45(c) (emphasis added) provides in part:

> *When Time Commences to Run.* The time for trial shall begin running, without demand by the defendant, as follows:
>
> (1) From the date the defendant is arrested, initially arraigned, or from the date the charge (complaint, indictment, or information) is served upon the defendant, whichever is first. *The arrest, arraignment, or service upon the defendant of a complaint, indictment, or information, relating to subsequent charges arising out of the same conduct, or the refiling of the original charge, shall not extend the time, unless the evidence on which the new charge is based was not available to the prosecution at the time the defendant was either initially arrested, arraigned, or served with the original charge, and a showing of due diligence in securing defendant for the original charges is made by the prosecution;*
>
> . . . .

We agree with the superior court that Brown's death was evidence which triggered a new commencement date for the running of time under Rule 45.

A related question was considered in *Adams v. State*, 598 P.2d 503 (Alaska 1979). Although over three months elapsed from the time of Adams' arrest until a complaint was filed, we held that the entire period was properly excludable for purposes of Criminal Rule 45:

> [T]here can be no doubt that from the time of Adams' arrest on August 28, 1975, to and including the date upon which the complaint was filed, January 7, 1976, there was good reason to believe that O'Neil might die at any moment. The state had to proceed in one of two ways: it could bring an immediate, nonhomicide charge, such as mayhem, or it could delay the filing of any charge, as it elected to do, in order to determine whether O'Neil's injuries would prove fatal. We think the state was entitled to delay the filing of a specific charge for a reasonable period of time and that such period of delay must be excluded in computing the time for Adams' trial under Rule 45.

598 P.2d at 507 (footnote omitted). The prosecution was faced with a similar dilemma in the instant case. Thus, it was proper for the prosecution to have dismissed the assault charges,[5] awaiting what was seemingly the certain death of the victim in order to charge Spencer with manslaughter. In a situation involving the delayed death of the victim, the 120–day period under Rule 45(c)(1) commences from the filing of the homicide complaint or indictment (if the defendant is not already in custody). Thus, we reject Spencer's argument that the relevant starting point for determination of compliance with Rule 45 was the date of her arrest on the assault with a dangerous weapon complaint.

As for the period from December 10 to December 29, the superior court held that this period ran against the state and this ruling is not challenged. The major thrust of Spencer's Rule 45 motion was directed to the period from December 29, 1976, when the bench warrant was issued after Spencer's failure to appear at her arraignment of the manslaughter charge, until January 31, 1978, when she was arrested in California.[6]

---

5. We need not consider and do not decide what effect the two dismissals of the assault with a deadly weapon charges would have had on a subsequent reindictment on assault charges if the victim had lived.

6. From the time of her arrest on January 31, 1978 to her return to Alaska on May 2, 1978, Spencer fought extradition. This period is ex-

cludable under Alaska Rule Crim.P. 45(d)(4), which provides that the following period is excluded in computing the time for trial:

> The period of delay resulting from the absence or unavailability of the defendant. . . .
> A defendant should be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained or he resists being returned to the state for trial.

Spencer claims that the state failed to use due diligence to locate her and return her to Alaska during this period which lasted over a year.

Spencer also claims that she was severely hampered in her ability to attack the state's efforts as lacking due diligence for this period because the state troopers relied upon confidential informants, whose names were not revealed to the defense, in attempting to locate Spencer. We must consider this claim prior to ruling on the question of due diligence. Specifically, State Trooper Feichtinger stated that he had talked with five confidential informants who were all contacted during the summer of 1977, and who told him that Spencer had not been seen and may have been in California. One of these five informants Feichtinger had known for one year previously and the others for a couple of months to a year.

On May 3, Spencer made her Rule 45 motion and the period of time during the pendency of that motion is excludable under Alaska R.Crim.P. 45(d)(1).

7. Alaska R.Evid. 509(c)(1) provides:

(1) *Voluntary disclosure; informer a witness.* No privilege exists under this rule if the identity of the informer or his interest in the subject matter of his communication has been disclosed to those who would have cause to resent the communication by a holder of the privilege or by the informer's own action, or if the informer appears as a witness for the prosecution.

8. Alaska R.Evid. 509(c)(2) provides:

(2) *Testimony on merits.*
(i) If a party claims that a government informer may be able to give testimony necessary to a fair determination of the issue of guilt, innocence, credibility of a witness testifying on the merits, or punishment in a criminal case, or of a material issue on the merits in a civil case to which the state is a party, and if the government invokes the privilege, the party shall be given an opportunity to show that his claim is valid. The judge shall hear all evidence presented by the party and the government, and both sides shall be permitted to be present with counsel during the presentation of evidence, subject to subdivision (c)(2)(ii) of this rule.
(ii) If the government requests an opportunity to submit to the court, by affidavit or testimony or otherwise, evidence concerning

The state has the privilege to refuse to reveal the identity of confidential informants. Alaska Rule of Evidence 509(a) provides:

*Rule of privilege.* The United States, the State of Alaska and sister states have a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer or member of a legislative committee or its staff conducting an investigation.

There are three exceptions to the privilege, none of which are applicable to the present case: voluntary disclosure, relevancy to the merits, and potentially illegally seized evidence. The identity of the informants has not been voluntarily disclosed nor are the informants witnesses.[7] The confidential informants are not claimed to be able to give testimony relating to the merits of the manslaughter charge against Spencer.[8] Nor did the information supplied to the

the information possessed by an informant, which submission might tend to reveal the informant's identity, the judge shall permit the government to make its submission without disclosure to the other party. Neither the attorney for the government, nor the other party or his attorney may be present when the judge is examining the *in camera* submission. Although the submission generally will consist of affidavits, the judge may direct that witnesses to appear before him, without the government or the other party present, to give testimony.
(iii) If the judge finds that there is a reasonable possibility that the informant can give the testimony sought, and if the government elects not to disclose the informant's identity, the judge shall, either on motion of a party or *sua sponte*, dismiss criminal charges to which the testimony would relate if the informant's testimony is material to guilt or innocence. In criminal proceedings in which the informant's testimony is not material to guilt or innocence and in civil proceedings the judge may make any order that justice requires.
(iv) Evidence submitted to the judge shall be sealed and preserved to be made available to the appellate court in the event of an appeal, and the contents shall not otherwise be revealed without consent of the government.

prosecution result in evidence whose seizure is challenged by the defendant.[9] Furthermore, we are not persuaded that any additional exception to this governmental privilege, is called for by the factual circumstances of this case; for law enforcement personnel have significant interests in the maintenance of informers as an important method of gathering information. As the commentary to Alaska Rules of Evidence states:

> [Rule 509] recognizes the use of informers as an important aspect of law enforcement, whether the informer is a citizen who steps forward with information or a paid undercover agent. In either event, the basic importance of anonymity in the effective use of informers is apparent, and the privilege of withholding their identity was well established at common law. McCormick (2d ed.) § 111; 8 Wigmore § 2374.[10]

Thus, we conclude no error occurred in the court's determination to not require release of the names of the confidential informants.

■ We next address the question of whether a sufficient showing of due diligence in efforts to locate Spencer was made by the state from December 29, 1976, until Spencer's arrest over a year later in California. As to this question, the provisions of Criminal Rule 45(d)(4) are controlling. This portion of Rule 45 provides that in computing the time for trial the following periods shall be excluded:

(4) The period of delay resulting from the absence or unavailability of the defendant. A defendant should be considered absent whenever his whereabouts are unknown and in addition he is attempting to avoid apprehension or prosecution or his whereabouts cannot be determined by due diligence. A defendant should be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained or he resists being returned to the state for trial.

Spencer emphasizes in her argument that if her counsel had been contacted in December, 1976, he could have made her available. While this argument is proper justification for finding, as the superior court did, that the period of nineteen days from the filing of the complaint until the arraignment be charged against the state, it is far from determinative of whether the period after the arraignment on December 29 should be tolled or excluded for our computation of the 120–day period.

Spencer argues that because of the state's lack of due diligence during the December 10 through December 29 period, the subsequent effort to locate the accused does not serve to toll the 120–day period: all delay after December 29 is chargeable to the state. We reject this argument. In its broadest outlines, it would mean that any minor lack of diligence for any period of time could then be capitalized on by a defendant if he or she could elude capture for the remainder of the Rule 45 period. Even

---

**9.** Alaska R.Evid. 509(c)(3) provides:

(3) *Legality of obtaining evidence.*

(i) When a defendant challenges the legality of the means by which evidence was obtained by the prosecution and the prosecution relies upon information supplied by an informer to support its claim of legality, if the judge is not satisfied that the information was received from an informer reasonably believed to be reliable or credible he may require the identity of the informer to be disclosed. In determining whether or not to require disclosure, the judge shall hear any evidence offered by the parties and both the defendant and the government shall have the right to be represented by counsel.

(ii) If the judge determines that disclosure of the informant's identity is necessary, upon request by the prosecution the disclosure shall be made to the court alone, not to the defendant. The judge may, if necessary, examine the informant or other witnesses about the informant, but such examination will be *in camera* and neither the defendant nor the prosecution shall be present or represented.

(iii) If disclosure of the identity of the informer is made to the court and not to the defendant, the record thereof shall be sealed and preserved to be made available to the appellate court in the event of an appeal, and the contents shall not otherwise be revealed without consent of the prosecution.

**10.** Commentary to the Alaska Rules of Evidence, 133 (1979).

if a period of lack of diligence chargeable against the state exists, the state's subsequent efforts showing due diligence to find her will again toll the running of the 120 days.

Further, although the state may have failed to follow a particular path of investigation, that alone will not necessarily result in a finding of a lack of diligence. Spencer points to the fact that the police never attempted to contact her attorney. Admittedly, the police did not pursue this method of search immediately upon issuance of the bench warrant. However, although Spencer claims to have been in Alaska on December 29, she left the state shortly thereafter and any attempt to contact her attorney at that point would have been ineffectual in producing her.

A failure to follow a particular method of finding an accused as a lack of diligence was considered in *Commonwealth v. Jones*, 256 Pa.Super. 366, 389 A.2d 1167, 1170 (1978). The defendant was well known to one police officer. However, the investigative officers on the case were unaware of this and used other means to find the defendant. Numerous searches were conducted and the circulation of the defendant's picture to various authorities eventually resulted in his arrest. In these circumstances, the court stated:

[W]e find that the Commonwealth exercised due diligence in locating appellant. Although the police could have pursued other avenues to locate appellant, that is not the controlling factor. It is simply not required that the Commonwealth exhaust every conceivable method of locating a defendant. Rather, reasonable steps must be taken.[11]

389 A.2d at 1170. We are persuaded to adopt a similar approach in this case in determining whether the state has exercised due diligence.

The affidavits and testimony of the state troopers show numerous efforts made over a period of the entire year to find Spencer. The search for her was never abandoned.[12] Individuals and addresses in Anchorage were checked to determine her whereabouts.

Once it was clear she might be out of state, the warrant for her arrest with a description was circulated nationwide and resulting leads and possible suspects were checked out.[13] It would be unreasonable to require the state to take further efforts than those present in this case. A nationwide manhunt would be expensive and

---

11. The Pennsylvania Supreme Court in *Commonwealth v. Mitchell*, 472 Pa. 553, 372 A.2d 826, 832 (1977) (footnote omitted) stated:

It is not the function of our courts to second-guess the methods used by police to locate accused persons. The analysis to be employed is whether, considering the information available to the police, they have acted with diligence in attempting to locate the accused. Deference must be afforded the police officer's judgment as to which avenues of approach will be fruitful. Instantly, McGurk knew an address, which information he pursued on numerous occasions, and he had a photograph of Mitchell, which he circulated within the police department. McGurk chose certain avenues of approach to locate Mitchell and pursued those avenues. In this context, such action warranted a conclusion of due diligence.

12. *Cf. Boccelli v. State*, 109 Ariz. 287, 508 P.2d 1149 (1973) (an active search of one month and subsequent arrest several months later when defendant at all times resided and was employed in the community); *State ex rel. Kennedy v. McCauley*, 265 So.2d 547, 549 (Fla.App.

1972) (police having incorrect address not sufficient to show unavailability of accused); *People v. Serio*, 13 Misc.2d 973, 181 N.Y.S.2d 340, 341–42 (1958) (defendant living and working in area with phone number listed sufficient to warrant a speedy trial violation when police let warrant lie dormant for several years).

13. A New Jersey court found the following procedures sufficient:

Although the record reflects that the efforts to locate defendant were not thorough or exhaustive, nevertheless there is substantial evidence to support the finding by the court that 'reasonable' efforts were undertaken. These included inquiries at available addresses and post office facilities, examination of telephone directories, inquiries at Essex County and State correctional institutions and at the office of the Newark Welfare Agency, as well as notification by teletype of appropriate police authorities throughout the country that defendant was wanted.

*State v. Hamlet*, 155 N.J.Super. 512, 382 A.2d 1171, 1173 (1978).

time-consuming, given the resources of law enforcement agencies and the numerous individuals under warrant in various states. Reasonable and numerous steps were taken and we conclude that as a result due diligence was exercised by the state. Thus, the superior court did not err in finding this period excluded and therefore correctly denied Spencer's Rule 45 motion.

AFFIRMED.