Warren Glen ODEKIRK, Appellant,

v.

STATE of Alaska, Appellee.

No. 5751.

Court of Appeals of Alaska.

Aug. 6, 1982.

David B. Loutrel, Anchorage, for appellant.

W. H. Hawley, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Warren Odekirk pled guilty to three counts of the sale of cocaine and was sentenced to a term of imprisonment. With the consent of the state and the court, he reserved the right to appeal his claim that Criminal Rule 45 barred his conviction.[1] We therefore have jurisdiction to consider that issue. *Oveson v. Municipality of Anchorage*, 574 P.2d 801, 803 (Alaska 1978); *Cooksey v. State*, 524 P.2d 1251, 1256-57 (Alaska 1974).

The parties are in agreement that Criminal Rule 45 required Odekirk's trial to commence within 120 days of his arrest, disregarding certain excluded periods. Odekirk was arrested on January 6, 1979; he was tried 496 days later on May 16, 1980. The state argued and the trial court decided to exclude the bulk of the intervening time in reliance on Criminal Rule 45(d)(4). The trial court expressly found: (1) that Odekirk's whereabouts were unknown from late January 1979 until mid-April 1980, and (2) that the state exercised due diligence to find Odekirk, or alternatively, (3) that Odekirk attempted to avoid apprehension or prosecution. If Odekirk avoided apprehension or the state used due diligence to find him, we would affirm the lower court's decision since either finding is sufficient for that purpose. We have reviewed the record and have concluded that the trial court's finding that Odekirk's whereabouts were unknown is supported by substantial evidence, but that both its finding that Odekirk attempted to avoid prosecution and its finding that

1. Alaska R.Crim.P. 45 provides in relevant part:

*Speedy Trial*:

. . . .

(b) *Speedy Trial Time Limits.* A defendant charged with a felony, a misdemeanor, or a violation shall be tried within 120 days from the time set forth in paragraph (c) of this rule.
(c) *When Time Commences to Run.* The time for trial shall begin running, without demand by the defendant, as follows:
   (1) From the date the defendant is arrested
   . . .
   . . . .

(d) *Excluded Periods.* The following periods shall be excluded in computing the time for trial:

. . . .

   (4) The period of delay resulting from the absence or unavailability of the defendant. A defendant should be considered absent whenever his whereabouts are unknown and in addition he is attempting to avoid apprehension or prosecution or his whereabouts cannot be determined by due diligence. A defendant should be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained or he resists being returned to the state for trial.

the prosecution used due diligence to find Odekirk are clearly erroneous. We therefore reverse.

Odekirk was arrested on January 6, 1979, for selling cocaine. He posted bond and was released. On January 10, 1979, Odekirk appeared at arraignment before Judge Virgil Vochoska in district court. At that time the state declined to file a complaint against Odekirk or his girlfriend, Lea Denardo, who had also been arrested with him on narcotics charges. When queried by the judge, the prosecutor indicated that he had no information regarding future prosecutions of Odekirk. Judge Vochoska asked Odekirk where he came from and Odekirk replied, "I'm from Nevada." Odekirk then inquired about the return of certain property seized by the police, and the judge referred Odekirk to the district attorney's office. Nancy Potter, a paralegal at the district attorney's office assigned to return property, testified that Odekirk and Denardo came to her office after the arraignment seeking the return of property that had been seized at the time of their arrest. Potter returned property to Denardo, but declined to return Odekirk's property. She explained to him that his case remained under investigation and that the district attorney still had the option of seeking a grand jury indictment against him.

On January 12, 1979, the grand jury indicted Odekirk on four counts of the sale of a narcotic drug in violation of AS 17.10.010. A summons was issued sometime between January 12 and January 15, but no effort was made to serve Odekirk with the summons prior to the date scheduled for his arraignment. It is not clear whether the failure to serve the summons resulted from court negligence or the negligence of the state troopers. An arraignment was calendered in superior court for January 16, 1979. Odekirk, having no notice, did not report and Judge Moody issued a bench warrant for his arrest. The unserved summons was returned on January 18, 1979. The record does not indicate the date upon which Odekirk departed Alaska, but his phone was disconnected on January 18, and the military shipped his personal property to St. George, Utah, on January 22, 1979.

Sometime in late January 1979, Odekirk's company commander contacted Officer Jones, who was in charge of the investigation of Odekirk's case. He advised him that Odekirk would be leaving the military in two days and that the military could not hold him beyond that time.

On January 30, 1979, the troopers entered information concerning Odekirk into the Alaska Justice Information System (AJIS). As of that date, an AJIS computer check showed two addresses for Odekirk: Headquarters Company, Box 1, Fort Richardson, Alaska 99503, and P.O. Box 1032, St. George, Utah, 84770.

Sometime between February 4 and February 8, 1979, judicial services assigned Trooper William McMillon to locate Odekirk. Another AJIS computer check was run on February 28, 1979, but disclosed no new information. On March 2, 1979, troopers entered the bench warrant information into the National Criminal Information Computer system (NCIC).

Between February and March, 1979, Jones spoke to Lea Denardo and learned that Odekirk had left the state. A few days before March 27, 1979, Officer Jones contacted Trooper McMillon, stating that he had information indicating that Odekirk was "definitely out of the state." The source of this information was not disclosed, though apparently Jones was relying on Ms. Denardo. On March 27, 1979, Jones again contacted McMillon, stating that he had "good information" that Odekirk was in Hawaii. The basis for Jones' belief does not appear in the record, though Ms. Denardo had apparently come from Hawaii and eventually returned there. Jones obtained certified copies of the arrest warrant from McMillon and forwarded them to the Honolulu Police Department. Jones called Lt. Donahue, who he understood was assigned to the Honolulu narcotics squad, informing him that Odekirk had fled Alaska and that there was a bench warrant in effect for Odekirk's arrest. Jones advised Donahue that Honolulu authorities should contact

Jones if any information concerning Odekirk became available. Jones had no further contact with Donahue or with any other Honolulu police officials. During March 1979, Jones also confirmed that the bench warrant information on Odekirk had been entered into NCIC.

The record does not establish Odekirk's whereabouts from mid-January 1979 until April 1, 1979. In April, Odekirk, using his own name, began working for Las Vegas Plywood and Lumber Company in Nevada. On August 1, 1979, Odekirk, again using his own name, rented an apartment in Las Vegas. On September 13, 1979, he applied for and received a Nevada driver's license, also in his own name. Nevada apparently did not enter Odekirk's application for a driver's license into the NCIC computer since the application check did not result in a NCIC "hit" showing that Odekirk was wanted in Alaska. Also during September 1979, Odekirk acquired a 1975 Chevrolet coupe and registered it in his name. It appears that Odekirk remained in Nevada working for Las Vegas Plywood and Lumber Company until his arrest in April of 1980.

The record reflects that no efforts were made to trace Odekirk between April 1979 and February 1980. Trooper Robert Nesvick testified that he was assigned to work on Odekirk's file sometime in late 1979 or early 1980, but because of workload burdens he made no further attempt to find Odekirk until February 15, 1980. On February 15, Nesvick called Odekirk's Boniface home phone number and learned that it was out of order, called Odekirk's work phone number at Fort Richardson, and unsuccessfully attempted to contact the purchaser of Odekirk's trailer. The record does not reflect that Odekirk's former commanding officer was ever contacted regarding Odekirk's whereabouts, or that any effort was made to discover where the army shipped Odekirk's personal effects or to trace him through army sources. There is nothing in the record which suggests that efforts to trace Odekirk through the military would have been fruitless. On February 15, 1980, the state troopers sent a teletype to state officials in Washington and Oregon requesting information about a vehicle that had been registered to Odekirk in Alaska. There is nothing in the record that indicates why the teletype was sent to those two states.

On February 19, 1980, Nesvick found a listing in the Anchorage phone book for a Teresa Odekirk, the defendant's ex-wife, but Ms. Odekirk furnished no information about the defendant. The same day, Nesvick successfully contacted Mr. LaFavor, the new owner of Odekirk's trailer, but LaFavor had no information relating to Odekirk.

Nesvick fruitlessly checked the Department of Motor Vehicles file on February 22, seeking additional vehicle registration information. Nesvick believed that his efforts were unavailing and filed the case away until April 1980. On April 15, Leo Brandlen, another trooper with judicial services, called directory assistance in St. George, Utah, the address listed on the January 30, 1977, AJIS computer printout. After obtaining a telephone number for an Odekirk in St. George, Brandlen called the number and spoke to Odekirk's mother. Brandlen represented himself to Odekirk's mother as a former army buddy of her son. Ms. Odekirk said that her son was not currently in Utah, but indicated that he would be in Las Vegas the following weekend. Brandlen testified that he believed that Ms. Odekirk was reluctant to give him information.

Corporal Summey of the state troopers contacted the Las Vegas Police Department on April 17 and sent them a certified copy of the bench warrant, a photograph of Odekirk, and a request to arrest him. Las Vegas officers apprehended Odekirk on April 22, 1980.

## DUE DILIGENCE

██ In reviewing trial court fact findings we apply the "clearly erroneous" standard. *Johnson v. State*, 631 P.2d 508, 512 (Alaska App.1981). "A finding of fact is 'clearly erroneous' when, although there

may be evidence to support it, the reviewing court is left with the definite and firm conviction on the entire record that a mistake has been made." *Troyer v. State*, 614 P.2d 313, 318 n.11 (Alaska 1980) (citations omitted).

■ Due diligence requires only that the state make reasonable efforts to find a defendant whose whereabouts are unknown. *Spencer v. State*, 611 P.2d 1, 7 (Alaska 1980). The facts of *Spencer* are helpful in analyzing this case. After various charges were filed and dismissed, Spencer was indicted for manslaughter on December 23, 1976. Spencer left Alaska on approximately December 30, 1976, without leaving a forwarding address; she was not located until January 31, 1978. The supreme court found that the state had made numerous and continuous efforts during the intervening year to find Spencer and concluded that due diligence was therefore established. While the state failed to contact Spencer's attorney regarding her whereabouts prior to her departure from Alaska, attempts at contacting her attorney after her departure would have been ineffectual in securing Spencer's presence at arraignment. The court concluded that only the time during December 1979, while Spencer was still in Alaska, should be charged against the state. *Spencer v. State*, 611 P.2d at 7.

*Spencer*, therefore, stands for two propositions: (1) Time will be charged to the state under Criminal Rule 45 only while a lack of due diligence exists; and, (2) a failure to exhaust every conceivable method of locating a defendant will not establish a lack of due diligence so long as the state, employing customary methods, continues to actively seek a defendant.

■ In reliance on *Spencer*, we conclude that the police activities between January 1979 and April 1979, and further activities between February 15, 1980, and April 22, 1980, might qualify as due diligence. In contrast with *Spencer*, however, we find that during the intervening time there existed a total lack of diligence bordering on an abandonment of the search for Odekirk. *Cf. Spencer v. State*, 611 P.2d at 7 n.12

(citing cases demonstrating lack of diligence). The record reflects that no efforts were made to find Odekirk from late March 1979 until February 15, 1980, a period of almost one year. While Spencer left no forwarding address, the state was continuously in possession of Odekirk's St. George, Utah mailing address and knew that he came from Nevada. While the state's activities between January and March of 1979 may have reasonably led the state to believe that it was more likely that Odekirk was in Hawaii than anywhere else, the record does not explain the state's failure to pursue the Utah and Nevada leads between April of 1979 and February of 1980. We are particularly concerned that no efforts were made to trace Odekirk through the military or to discover where it sent his personal effects upon his termination from the army. Given the fact that Odekirk's commanding officer specifically contacted Officer Jones to warn him of Odekirk's pending discharge and intent to leave the state, it is surprising that Jones did not again contact the commanding officer for assistance in locating Odekirk. Consequently, we conclude that the period of April 1979 until February 1980 should have been charged to the state as a period during which the state did not exercise due diligence in searching for Odekirk. This conclusion precludes prosecution of Odekirk unless we sustain the trial court's alternate holding that Odekirk was attempting to avoid apprehension.

## AVOIDING APPREHENSION

The trial court based its decision that Odekirk attempted to avoid apprehension on two factors: first, that Odekirk's departure from Alaska occurred almost immediately after he contacted Nancy Potter, and second, the failure on the part of Odekirk's mother to give Officer Brandlen an exact address for Odekirk.

■ We conclude that the trial court's findings were clearly erroneous. We base our conclusion on the following factors: (1) No charges were pending against Odekirk

at the time he conversed with Nancy Potter; (2) the prosecuting attorney who notified Judge Vochoska in Odekirk's presence that the complaint against Odekirk was dismissed was specifically asked whether further charges were anticipated, and answered evasively; (3) Nancy Potter did not tell Odekirk that charges were contemplated, though she did mention that they could be brought and refused to release his personal effects; (4) the state did not request that Odekirk be held on bond pending referral to the grand jury; and (5) Odekirk's commanding officer contacted the police to inform them that Odekirk was leaving the service and planned to leave the state immediately, yet no efforts were made to secure Odekirk's presence. Under these circumstances we do not believe it can reasonably be inferred that Odekirk knew that charges were imminent and fled the state to avoid apprehension.

It is not unusual for someone to leave Alaska upon the completion of his or her military service. Given the great efforts the prosecuting attorney and Ms. Potter made to avoid leading Odekirk to believe that prosecution was imminent, we do not believe his leaving the state supports an inference of intentional avoidance of apprehension.

■ Finally, in our view, Ms. Odekirk's hesitancy to provide her son's current address to a total stranger who contacted her by phone would not permit an inference that Odekirk was hiding from the authorities.

The judgment of the superior court is REVERSED. The indictment against Odekirk must be dismissed.