FILED
COURT OF APPEALS
DIVISION II

2015 AUG 18 AM 9: 05

STATE OF WASHINGTON
BY_____DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46316-4-II |
| Respondent, | |
| v. | |
| A.S.,[1] | UNPUBLISHED OPINION |
| Appellant. | |

BJORGEN, A.C.J. — AS appeals his guilty adjudication for second degree rape, asserting that (1) the trial court violated his constitutional right to present a defense and (2) the State failed to present sufficient evidence to support the guilty adjudication. We hold that the State presented sufficient evidence in support of AS's guilty adjudication, but that the juvenile court violated AS's constitutional right to present a defense by prohibiting defense counsel from questioning the victim about her potential motive to fabricate the allegations against AS. Accordingly, we reverse AS's guilty adjudication and remand for a new hearing.

FACTS

On March 13, 2014, 15-year-old BN asked her longtime friend, 16-year-old AS, to help her move a riding lawn mower that was located in the backyard of BN's home in Thurston County. While they were moving the lawn mower, AS slapped BN on her rear several times; BN responded by repeatedly telling AS to stop. After they finished moving the lawn mower, AS and BN went inside BN's home and sat in the dining room. While they were in the dining room, AS grabbed BN's thighs and pulled her onto his lap. BN again told AS to stop.

---

[1] Pursuant to General Order 2011-1 of Court of Appeals, Division II, the names of the minors will be indicated with initials.

BN went to her bedroom to retrieve a soda; AS followed and stood by her bed. According to BN, AS then pushed her onto the bed, got on top of her, and held her hands down over her head. BN stated that AS pulled off her sweat pants with one hand while continuing to restrain her hands with his other hand. BN further stated that AS pulled her shorts to the side and forcibly engaged in sexual intercourse with her. BN said that she "kept telling him no, and he wouldn't stop." Report of Proceedings (RP) at 109. When AS finished, he got up and told her, "I came inside of you. Don't be popping out any babies." RP at 110.

After AS left BN's house, BN called her friend BD and told her that AS "forced me to have sex with him." RP at 111. BN also called her friend KS and told him the same thing; KS advised BN to tell the police and her mom about the incident. After talking with KS, BN called her mom and then called the police.

Thurston County Sheriff's Deputy Camm Clark responded to BN's call, took her taped statement, and took photos of scratches on her wrist and neck. Shortly thereafter, Clark advised AS of his *Miranda*[2] rights. AS admitted to Clark that he had been flirting with BN that day, had pulled BN onto his lap, and had slapped her on her rear. AS also admitted that he had sexual intercourse with BN but stated that it was consensual.

On the following day, March 14, 2014, the State charged AS with second degree rape by forcible compulsion. At the juvenile court fact-finding hearing, BN and Clark testified consistently with the facts as stated above. After the State rested, defense counsel informed the juvenile court that he would be calling BN as a witness, and that he would be seeking to discredit BN's credibility and to establish BN's motive to fabricate the allegations against AS, stating:

---

[2] *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

2

Essentially there are two points here. We're attacking bias and credibility in this case as well as motive to lie and some anger towards my client, all of which is relevant in this case as motive to lie.

Credibility—I know the Court sustained an objection on our first line of questioning, but it goes to an incident that same day where we're alleging that [BN] and her friend lied about receiving a traffic infraction, something very trivial, but she was very mad at [AS] about that because they had asked [AS] to take credit for having gotten that infraction which he did not do. [AS] basically said that it was [BN] who got the ticket. That angered [BN] because it made it so she couldn't hang out with [BD] for some reason, who was here earlier testifying. [BN] came over to confront [AS] about that before the incident, just a matter of probably an hour before, so not very long. She went over to [AS's] house and confronted him about that. So we have both the anger from that incident and the fact that she essentially tried to get [AS] to lie about something, and when he didn't lie, she got angry at him, which goes to credibility.

There's another area we wish to delve into which goes to motive as well. [AS] has a very good friend named [J]. [J] is [BN's] boyfriend who she just broke up with. We're not going to go into any sexual history, any promiscuity, anything like that, but it happened within the last week or two, and we think it's relevant because she didn't want [J] to know that she had sex with [AS]. Again, this is our only substantive witness to this act. We think it will show some bias, and bias is always relevant to get into, the witness's bias, and credibility is always relevant.

RP at 161-62.

The State argued that none of the information defense counsel sought to elicit from BN was relevant. Following further argument by defense counsel and the State, the juvenile court ruled that it was not foreclosing defense counsel from exploring these issues while questioning BN, but that defense counsel would have to establish adequate foundation to do so.

During his examination of BN, defense counsel asked her, "[E]arlier in the day had you and your friend asked [AS] to lie for you?" RP at 173. After the State objected based on relevance, the trial court asked defense counsel to establish the relevance of his inquiry with an offer of proof, and the following exchange took place:

[Defense counsel]: My offer of proof would be that she's going to answer yes, that she's going to—then my next question would be and that [AS] . . . did not lie for her that same day and that she was angry about that with [AS]. That anger shows bias which is always something I can inquire into.

[State]: The bias, Your Honor, has to be relevant to the facts in question here. Even if that were in fact to happen, that she was angry with him because he didn't do what she and a friend wanted, allegedly wanted him to do, how will that create bias for an incident that happened a substantial amount of time later, not involving the friend? I still don't understand. The bias has to be related to the crime.

[Defense counsel]: No, that's not correct. The bias is related to the witness. Is the witness biased against my client? That's what it's related to.

[Juvenile court]: I don't think you have established the relevance or the link. If you want to ask this witness something else, you are free to.

RP at 174-75.

After the trial court ruled, defense counsel asked BN, "[T]he day of the incident—again we're talking about March 13th through 14th—had [AS] done something that had made you angry?" RP at 175. The State objected based on relevance, and the juvenile court sustained the objection. Defense counsel then asked BN, "[O]n the day of the incident, had you gone over to confront [AS] about not having lied for you that day?" RP at 176. The State again objected, and the juvenile court again sustained the objection. Defense counsel declined to ask BN any further questions. The juvenile court entered an order on adjudication and disposition finding AS guilty of second degree rape and entered its written findings of fact and conclusions of law in support of the guilty adjudication. AS appeals.

ANALYSIS

I. RIGHT TO PRESENT A DEFENSE

AS first contends that the juvenile court violated his constitutional right to present a defense by prohibiting defense counsel from questioning BN about her potential bias and motive to fabricate the rape allegations against AS. We agree.

A defendant in a criminal trial has a constitutional right to present a defense. *State v. Rehak*, 67 Wn. App. 157, 162, 834 P.2d 651 (1992); *see also In re Gault*, 387 U.S. 1, 87 S. Ct 1428, 18 L. Ed. 2d 527 (1967) (Juvenile proceedings that may result in a juvenile's confinement

4

are to be regarded as criminal proceedings for which the constitutional rights to notice of charges, counsel, confrontation, cross examination, and against self-incrimination apply). "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973).

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Washington v. Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). However, a criminal defendant's right to present a defense is not absolute; a defendant seeking to present evidence must show that the evidence is at least minimally relevant to a fact at issue in the case. *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401.

A.   Evidence Related to BN's Credibility and Potential Motive to Fabricate Allegations Against AS Was Relevant

Defense counsel sought to question BN about whether she was angry with AS for AS's refusal to lie and take the blame for receiving a traffic infraction that either BN or BN's friend had committed.[3] AS asserts that evidence of BN confronting him about refusing to take the

---

[3] Although the trial court did not foreclose defense counsel from questioning BN, subject to establishing proper foundation, about whether she had fabricated the rape allegation against AS because she did not want her ex-boyfriend to know that she had consensual sex with AS, defense counsel did not pursue this line of questioning. Because defense counsel did not pursue this line of questioning, we do not address whether AS's right to present a defense would have been violated had the juvenile court excluded such evidence.

blame for a traffic infraction was relevant to establish her motive to fabricate the allegations against him, show her bias, and attack her credibility.[4] We agree that the evidence AS sought to admit through BN's testimony met the low threshold of relevance under ER 401.

Impeachment evidence is relevant only where "(1) it tends to cast doubt on the credibility of the person being impeached, and (2) the credibility of the person being impeached is a fact of consequence to the action." *State v. Allen S.*, 98 Wn. App. 452, 459-60, 989 P.2d 1222 (1999). With regard to the first requirement, evidence that BN was angry with AS over his refusal to take the blame for a traffic infraction tended to show her bias against him and, thus, was relevant to challenge BN's credibility. *See State v. Whyde*, 30 Wn. App. 162, 166, 632 P.2d 913 (1981) ("Bias and interest are relevant to the credibility of a witness."). This evidence could also establish BN's potential motive to fabricate the allegations against AS and, thus, was relevant to challenge her credibility for this reason as well. *See, e.g., State v. Lubers*, 81 Wn. App. 614, 623, 915 P.2d 1157 (1996) (Where an accuser's credibility is crucial, the accuser's motive to lie is not a collateral issue and, thus, extrinsic evidence may be used to impeach the accuser).

With regard to the second requirement, BN's credibility was clearly a fact of consequence in the juvenile proceeding against AS, because the State's entire case depended on the fact finder believing her accusations. *See State v. Roberts*, 25 Wn. App. 830, 834, 611 P.2d

---

[4] We note that it is of no consequence that defense counsel sought to impeach BN by calling her as a witness, rather than through cross examination. ER 607 provides, "The credibility of a witness may be attacked by any party, including the party calling the witness." A witness may be impeached by evidence of the witness's bias. *See, e.g., State v. Allen S.*, 98 Wn. App. 452, 467 n.62, 989 P.2d 1222 (1999) (Proper impeachment evidence includes evidence of "mental or physical deficiency; *bias*; character for untruthfulness; contradiction by others; and self-contradiction by one's own prior inconsistent statement.") (emphasis added) (citing JOHN W. STRONG, MCCORMICK ON EVIDENCE § 33, at 124 (5th ed. 1999); 5C KARL B. TEGLAND, WASHINGTON PRACTICE: COURTROOM HANDBOOK ON WASHINGTON EVIDENCE at 269.

1297 (1980) ("Where a case stands or falls on the jury's belief or disbelief of essentially one witness, that witness's credibility or motive must be subject to close scrutiny."). Additionally, BN's credibility was of particular importance because she had accused AS of committing a sex offense. *See Roberts*, 25 Wn. App. at 834-35 (In a sex crime prosecution "the credibility of the accuser is of great importance, essential to the prosecution and defense alike."). Because the evidence AS sought to admit related to BN's credibility, and because BN's credibility was a fact of consequence in the adjudication hearing, we hold that the evidence met the threshold for relevance under ER 401.

B.      *State v. Perez-Valdez* and *State v. Lubers*

The State argues that *State v. Perez-Valdez*, 172 Wn.2d 808, 265 P.3d 853 (2011) and *Lubers* command a different result regarding the relevance of the evidence AS sought to admit through BN's testimony. Because those cases are distinguishable from the present case, we disagree.

In *Perez-Valdez*, the defendant sought to present evidence that his adopted daughters, the alleged rape victims, committed arson at a foster home that they had moved in to after being removed from the defendant's home. 172 Wn.2d at 811. The defendant argued that evidence of the subsequent arson showed that the alleged victims were willing to take extreme measures to get removed from homes that they did not like. *Perez-Valdez*, 172 Wn.2d at 811. The trial court prohibited the defense from presenting evidence of the arson, finding that defense counsel failed to establish that the victims burned their foster home because they hated living there and that the evidence was unduly prejudicial. *Perez-Valdez*, 172 Wn.2d at 812. However, the trial court permitted defense counsel to establish and argue that the victims were removed from their subsequent foster home placement because they did something serious in order to get removed.

*Perez-Valdez*, 172 Wn.2d at 812. Defense counsel was also permitted to present evidence regarding the victims' reputations for being untruthful. *Perez-Valdez*, 172 Wn.2d at 811.

On appeal, the defendant did not argue that the trial court's ruling prohibiting evidence of the arson violated his right to present a defense but, instead, argued only that the trial court erred by not admitting evidence of the arson under ER 404(b). *Perez-Valdez*, 172 Wn.2d at 815. Our Supreme Court affirmed the trial court's ruling, holding that although ER 404(b) did not prohibit admission of the arson evidence, the trial court nonetheless did not abuse its discretion by excluding the evidence because it was reasonable for the trial court to conclude that the arson evidence was unduly prejudicial and that "the arson was too removed from a false accusation of rape to necessarily be considered evidence of motive to lie." *Perez-Valdez*, 172 Wn.2d at 815-17. Our Supreme Court also noted that the trial court's ruling excluding evidence of the arson did not prevent the defense from arguing its theory that the victims fabricated their rape allegations and did not prevent the defense from presenting evidence of the victims' reputations for being untruthful. *Perez-Valdez*, 172 Wn.2d at 816.

In contrast with *Perez-Valdez*, where the defense sought to admit evidence of the victims' subsequent actions against a third party to establish their motive to lie about the allegations against the defendant, here AS alleged a conflict between himself and the victim that occurred approximately an hour before the alleged rape. Accordingly, unlike in *Perez-Valdez*, we cannot conclude that evidence of BN's alleged confrontation with AS over his refusal to lie for her was too far removed from BN potential motive to fabricate the rape allegations against him. Further, the trial court's ruling in *Perez-Valdez* did not prevent defense counsel from presenting evidence that the victims did something serious to be removed from a subsequent foster placement but, rather, only prevented defense counsel from eliciting testimony that the victims committed arson,

8

based on the prejudicial nature of the evidence. Here, in contrast, the juvenile court prevented defense counsel from presenting any evidence of the alleged confrontation between BN and AS, and it prevented defense counsel from presenting any evidence that AS had done something on the same day as the incident to make BN angry. Accordingly, *Perez-Valdez* is distinguishable from the present case.

We similarly conclude that *Lubers* is distinguishable from the present case. In *Lubers*, defense counsel sought to present evidence that family members of the alleged victim had an ongoing dispute with the defendant's girlfriend, arguing that the evidence was relevant to the victim's motive to fabricate rape allegations against him. 81 Wn. App. at 618. Defense counsel did not allege that the victim was involved in the dispute between members of her family and the defendant's girlfriend. *Lubers*, 81 Wn. App. at 618. The trial court prohibited evidence of this alleged dispute, finding that the evidence was not relevant, and we affirmed. *Lubers*, 81 Wn. App. at 618, 623.

In contrast with *Lubers*, here AS sought to admit evidence of a direct conflict between himself and the victim. Accordingly, *Lubers* is distinguishable and does not undermine our conclusion that evidence of the alleged confrontation between AS and BN was relevant.

The State also argues that it is highly unlikely that BN would fabricate rape allegations based on AS's refusal to take the blame for a traffic infraction. The weight of evidence sought to be presented, however, is not a pertinent concern when determining its relevance and admissibility. Although it is for the fact finder to ultimately determine what weight to give to this evidence of an alleged conflict between AS and BN, we cannot conclude that it was irrelevant to establishing BN's bias and her potential motive to lie about the allegations.

C.     The Juvenile Court Erred By Refusing to Admit the Impeachment Evidence

Having established the relevance of the evidence AS sought to present, we now turn to whether the trial court erred by excluding it. If the defendant establishes the minimal relevance of the evidence sought to be presented, the burden shifts to the State "to show the evidence is so prejudicial as to disrupt the fairness of the fact-finding process at trial." *State v. Darden*, 145 Wn.2d 612, 622, 41 P.3d 1189 (2002). A trial court must then balance "the State's interest to exclude prejudicial evidence . . . against the defendant's need for the information sought," and may exclude such evidence only where "the State's interest outweighs the defendant's need." *Darden*, 145 Wn.2d at 622.

The State has not presented any argument regarding the prejudicial nature of the evidence at issue and, thus, cannot meet its burden to show that the evidence was "so prejudicial as to disrupt the fairness of the fact-finding process at trial." *Darden*, 145 Wn.2d at 622. Further, even if prejudicial, the defendant's need for the evidence clearly outweighed the State's interest in excluding it. AS admitted to engaging in sexual intercourse with BN but claimed that the intercourse was consensual, and the State's entire case depended on the trier-of-fact finding BN's testimony credible that the sex was not consensual. Thus, evidence calling BN's credibility into doubt was crucial to AS's defense and outweighed any interest the State had in excluding it. Therefore, we hold that the juvenile court's ruling excluding the evidence violated AS's right to present a defense. Accordingly, we reverse AS's guilty adjudication for second degree rape.

II. SUFFICIENCY OF THE EVIDENCE

Although we reverse AS's conviction based on the violation of his right to present a defense, we must address his challenge to the sufficiency of the evidence to determine whether a

10

new adjudicatory hearing is barred by the prohibition against double jeopardy. *State v. Wright*, 165 Wn.2d 783, 792, 203 P.3d 1027 (2009). We conclude that his sufficiency challenge fails.

A challenge to the sufficiency of evidence presented at a bench trial requires us to review whether substantial evidence supports the findings of fact and whether those findings support the conclusions of law. *State v. Homan*, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014). "'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise." *Homan*, 182 Wn.2d at 106 (citing *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005)). We review challenges to a trial court's conclusions of law de novo. *State v. Gatewood*, 163 Wn.2d 534, 539, 182 P.3d 426 (2008).

Although AS assigns error to several of the trial court's factual findings, he does not explain how substantial evidence fails to support those findings. *See State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004) ("Without argument or authority to support it, an assignment of error is waived."). Instead, AS argues that BN's testimony, alone, was insufficient evidence from which the trier of fact could find that he engaged in sexual intercourse with BN by forcible compulsion. We disagree.

To adjudicate AS guilty of second degree rape as charged here, the State had to prove beyond a reasonable doubt that AS engaged in sexual intercourse with BN by forcible compulsion. RCW 9A.44.050(1)(a). RCW 9A.44.010(6) defines "forcible compulsion" in relevant part as "physical force which overcomes resistance." Here, BN testified that AS pushed her onto the bed, climbed on top of her, pinned her arms over her head, took off her pants, and then engaged in sexual intercourse with her while she repeatedly told him no and tried to push him off. This evidence is more than sufficient to persuade a fair-minded person that AS forcibly compelled BN to engage in sexual intercourse.

No. 46316-4-II

AS argues that BN's testimony was "suspect" because her physical examination revealed no physical trauma and because AS testified that BN consented to sexual intercourse. Br. of Appellant at 19. This argument concerns the weight of the evidence and the credibility of witnesses, determinations exclusively for the trier of fact and not subject to review. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990); *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992), *abrogated on other grounds by In re Pers. Restraint of Cross*, 180 Wn.2d 664, 327 P.3d 660 (2014). In addition, the State was not required to present any evidence corroborating BN's testimony to adjudicate AS guilty of second degree rape. *See* RCW 9A.44.020(1) ("In order to convict a person of any crime defined in this chapter it shall not be necessary that the testimony of the alleged victim be corroborated."). Accordingly, we hold that the State presented sufficient evidence to adjudicate AS guilty of second degree rape.

We reverse AS's guilty adjudication based on the violation of his right to present a defense and remand for a new adjudicatory hearing.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, J.

We concur:

JOHANSON, C.J.

MELNICK, J.

12